STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 97-7-14 Vtec |
|---|---|
| Tilton Variance Application | DECISION ON MOTION |

This matter concerns property and structures on Maidstone Lake Road in the Town of Maidstone, Vermont (the Property) owned by Larry and Deborah Tilton (the Tiltons). On April 10, 2014 the Tiltons applied for a variance to allow construction of a roof over an existing porch located partially within the required 25-foot setback from Maidstone Lake. The Tiltons timely appealed the Town of Maidstone Zoning Board of Adjustment's (ZBA) decision dated June 5, 2014 denying their application. Now before the Court is the Tiltons' Motion for summary judgment seeking judgment as a matter of law in their favor as to all seven Questions filed in the Statement of Questions.

The Tiltons are represented in this appeal by Christine M. Pierpont, Esq. The Town of Maidstone has not entered an appearance in the matter.

## Factual Background

For the sole purpose of putting the pending motion into context the Court recites the following facts which are undisputed:

1. Larry and Deborah Tilton own Lots 99 and 100 (together, the Property) on Maidstone Lake Road in the in the Maidstone Lake District in the Town of Maidstone, Vermont.

2. The Property is approximately 20,161 square feet in size, measuring 200 feet ± along the lake by 100 feet ± deep.

3. The Tiltons purchased the Property in 1998. At that time the Property was developed with a cottage (the Cottage) and outbuildings. The Town did not adopt zoning bylaws until July 8, 2002 (the Bylaws).

4. The Cottage was built around 1940 and was a preexisting nonconforming structure in the Maidstone Lake District when purchased by the Tiltons in 1998. The Cottage was

nonconforming because it is located partially within the 25-foot waterfront setback along the northern shore of Maidstone Lake. The area within the lake setback includes the southwestern corner of the Cottage, the majority of a covered porch along the western side of the Cottage, and a portion of a porch attached to the lakeside door on the southern side of the Cottage.

5.      In 1999, the Tiltons replaced the Cottage's foundation, remodeled the kitchen, bedroom, bathroom, and porch, and constructed a 16 foot by 20 foot addition within seven feet of the lake.

6.      On August 20, 2012, the Tiltons applied for a zoning permit to extend an existing roof over a covered porch on the north side of the Cottage to the existing porch along the west side of the Cottage, located partially within the lake setback. On October 12, 2012 the ZBA notified the Tiltons that they had been granted a variance for the roof-extension with a condition that the roof not extend more than two feet south of the side entrance door on the western side of the Cottage.

7.      On February 11, 2014, the Tiltons applied for a zoning permit to construct a roof over an existing porch[1] attached to the lakeside door of the Cottage. As proposed, the roof was located between 22 and 34 feet from the lake. The ZBA denied the application by written decision dated March 30, 2014 because the proposed roof was within the lake setback requirement.

8.      On April 10, 2014, the Tiltons requested a variance of the 25-foot setback requirement to allow for the construction of a roof over the porch attached to the lakeside door of the Cottage. Their application cited health, safety, and maintenance reasons. The Tiltons allege that a roof is necessary over the lakeside porch to prevent snow and ice from causing damage to windows, doors, and siding along the lake side of the Cottage. The ZBA denied the application by written decision dated June 5, 2014.

9.      The Tiltons appealed the ZBA's decision on July 2, 2014.

### Discussion

The Tiltons move for summary judgment in their favor on all seven Questions. The Tiltons' Questions 1, 2, and 4 ask whether they are entitled to a variance to construct a roof

---

[1] Based on the site plans and pictures submitted by the Tiltons, it is unclear to the Court when this existing porch was constructed. It is not depicted on the 1999 site plans or in the pictures from that time. It appears it was constructed at some point between 1999 and 2005 based on the submitted site plans.

2

over an existing porch within the setback.  Questions 5, 6, and 7 ask whether they are entitled to construct the roof without obtaining a variance because the roof does not encroach farther into the setback than the porch and is necessary for safety and maintenance purposes. Question 3 raises issues with the proceedings below and are not within this Court's jurisdiction in this de novo appeal.  For this reason, we **DISMISS** Question 3.

The Tiltons argued that there are no facts in dispute that are material to the resolution of those Questions and that they are entitled to a variance or a permit under the non-conforming use maintenance exception as a matter of law.  The Town has not filed a response in the matter.

## I.      Summary Judgment Standard

The Court will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  V.R.C.P. 56(a).  We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment" and give the non-moving party the benefit of all reasonable doubts and inferences.  Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citation omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures).  The Court "need consider only the materials cited in the required statements of fact, but it may consider other materials in the record."  V.R.C.P. 56(c)(3).

## II.     Variance

The Tiltons' Questions 1, 2, and 4 ask whether they are entitled to a variance to construct a roof over an existing porch partially within the lake setback.  To receive a variance from conformance with applicable zoning requirements, an applicant must satisfy all five statutorily-established criteria.  See Blow v. Town of Berlin Zoning Adm'r., 151 Vt. 333, 335 (1989) (citations omitted) (referencing 24 V.S.A. § 4468(a), which was the predecessor to 24 V.S.A. § 4469(a)).  Thus, when an applicant cannot satisfy any one of the criteria, the variance application must be denied as a matter of law.  E.g., In re Ray Reilly Tire Mart, 141 Vt. 330, 332 (1982); see Blow, 151 Vt. at 336.  The Bylaws do not set forth criteria under which to evaluate an application for a variance, leaving this Court to consider those listed in 24 V.S.A. § 4469(a):

> (1) There are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or

3

other physical conditions peculiar to the particular property, and that unnecessary hardship is due to these conditions, and not the circumstances or conditions generally created by the provisions of the bylaw in the neighborhood or district in which the property is located.

(2) Because of these physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the bylaw, and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) Unnecessary hardship has not been created by the appellant.

(4) The variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate use or development of adjacent property, reduce access to renewable energy resources, or be detrimental to the public welfare.

(5) The variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the bylaw and from the plan.

24 V.S.A. § 4469(a).

The Tiltons allege that they satisfy all five of these criteria. They suggest that unnecessary hardship is due to the location of the Cottage, which preexisted the Bylaws and their ownership, and the shape and depth of the Property, rather than the setback requirements in the Bylaws. They argue that there is no possibility that the Property can be developed in strict conformity with the Bylaws because it is a long, skinny, undersized lot and that there is not sufficient area on the Property to allow full compliance with the setback requirements. They further suggest that a variance is necessary to bring the Cottage into compliance with the Vermont Fire Safety Code. The variance would allow the Tiltons to construct a roof over the porch attached to the lakeside door of the Cottage, which they argue is required by the Fire Safety Code. Fire Safety Code § 101:7.2.2.6.5. ("New outside stairs and landings, other than the primary entrance, shall be designed to minimize the accumulation of snow, ice and water by a roof or other approved means.").

Based on the undisputed facts presented by the Tiltons, however, the Tiltons have failed to satisfy any of the five criteria. It is true that the Property is shallow, but the "hardship" is attributable to the setback rather than conditions particular to the Property. More specifically, the hardship presented by the Tiltons was created by the location of the southern porch within

4

the lake setback and the design of that porch in such a way as to result in the buildup of snow and ice.  Additionally, the shallow nature of the Property does not prevent the Tiltons from developing the Property in strict conformity with the setback requirements.  The Tiltons have developed the Property extensively since obtaining ownership.  They now argue that a variance is necessary to enable the reasonable use of the Property because the southern porch is in violation of the Fire Safety Code.  The portion of the Fire Safety Code they rely on, however, applies to "new outside stairs and landings."  The porch at issue is not new.[2]  Further, the Court notes that because only a corner of the porch is within the setback, it would be possible for the Tiltons to construct a roof that complies with the setback requirement and minimizes the accumulation of snow in front of the egress.  A variance is not, therefore, necessary to enable the reasonable use of the property.

Furthermore, the Court is concerned with variations within the Tiltons' motion and exhibits.  Although the Tiltons refer to the porch in their motion as a "preexisting nonconforming structure," the porch does not appear on the sketch plans until 2005.  In exhibit 4, the sketch plan for the 1999 addition, a porch extends along the west side of the Cottage and overlaps with a porch on the south side of the Cottage, creating a smooth "L" shaped curve.  In exhibit 8A, however, a sketch plan dated 2005, although the "L" shaped curve remains, the area labeled "porch" on the south side of the Cottage no longer extends along the entirety of the Cottage, nor does it seamlessly merge with the porch along the west side of the Cottage; rather, in that exhibit the porch extends out from the area that was depicted as the porch in exhibit 4.

Even more confusing to a determination of the Tiltons development of their property is the variation in the area of the Cottage on different site plans and permit applications.  In their 1999 application for a zoning permit, the Tiltons indicated that the original Cottage was 28 feet long by 26 feet wide, or 728 square feet.  That application sought a permit for an addition 16 feet by 20 feet, or 320 square feet.  After the 1999 additions, therefore, the Cottage should have had a total area of 1048 square feet.  The Tiltons 2012 application, however, indicated that the Cottage was 45 feet long by 40 feet wide, or 1800 square feet, and their 2014

---

[2] Again, the Court notes that it is unclear when this porch was constructed, but that it first appears in the site plans in 2005.  We find this sufficient to determine that the porch is not new as of 2014.

application indicated that the Cottage was 1338 square feet. The differences between site plans and measurements of the Cottage's area do not support the Tiltons contention that the Cottage remains on its original foundation or that they have not expanded their noncompliance without prior approval from the Town. In light of these inconsistencies, the Court cannot conclude that the hardship has not been created by the Tiltons.

As to the remaining criteria, although the Cottage is located in a lake community where there are residential homes with covered porches, the Tiltons offer no evidence of other homes with covered porches within the lake setback. Regardless, any expansion of a nonconforming structure within the setback alters the essential character of the neighborhood by increasing the degree of noncompliance with the Bylaws. Finally, as indicated above, if the Tiltons wish to comply with the Fire Safety Code by preventing the accumulation of snow in front of the southern egress, their proposed variance is not the minimum that will afford relief. Although the porch extends beyond the area in front of the side door, it only encroaches on the setback along the western boundary of the porch. If the Tiltons wish to comply with the Fire Safety Code, they could achieve this goal without violating the setback by constructing a smaller roof over the doorway rather than over the entire porch. For these reasons, the Tiltons are not entitled to a judgment in their favor on Questions 1, 2, and 4 as a matter of law. We **DENY** their motion for summary judgment as to Questions 1, 2, and 4.

III.     **Non-Conforming Use Maintenance Exception**

Taken together, the Tiltons' Questions 5, 6, and 7 ask whether they are entitled to construct a roof over their porch without a variance because it is permitted as normal maintenance and repair of a non-complying structure under Bylaws § 403. The Court notes that the present appeal relates solely to the ZBA's decision denying the Tiltons' application for a variance. As such, the Court's jurisdiction in this matter is limited to the Tiltons' application for a variance. See, e.g., In re Torres, 154 Vt. 233, 235 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader."); In re Maple Tree Place, 156 Vt. 494, 500 (1991) ("[I]t is beyond [the superior court's] role as an appellate tribunal, even under a de novo review

6

standard, to start addressing new issues never presented to the planning commission and on which interested persons have not spoken in the local process.").

Furthermore, the Tiltons have already applied for a zoning permit to construct a roof over their lakeside porch, which the ZBA denied by written decision on March 30, 2014. Their failure to appeal that decision to this Court renders the ZBA's denial final and binding. 24 V.S.A. § 4472(d) ("Upon the failure of an interested person . . . to appeal to the Environmental Division under section 4471 of this title, all interested persons affected shall be bound by . . . the decisions of the [municipal] panel. . . and shall not thereafter contest, either directly or indirectly, the . . . decision of the panel in any proceeding . . . "). Because Questions 5, 6, and 7 are not within the scope of this appeal, they are in effect a request for an impermissible advisory opinion. See, e.g., <u>Chase v. State</u>, 2008 VT 107, ¶ 13, 184 Vt. 430 (holding that courts lack constitutional authority to render an advisory opinion). Questions 5, 6, and 7 are therefore **DISMISSED**.

### Conclusion

The Tiltons seek a variance to allow construction of a roof over an existing porch along the southern side of their Cottage and located partially within the lake setback of 25 feet. They seek judgment in their favor on all seven of their Questions. Question 3, 5, 6, and 7 raise issues outside this Court's jurisdiction and are **DISMISSED**. Further, we **DENY** the Tiltons' motion for summary judgment as to Questions 1, 2, and 4 based on our finding that the Tiltons are not entitled to a variance under 24 V.S.A. § 4469(a) as a matter of law.

For the reasons discussed above, the Court hereby provides notice of our intent to **GRANT** summary judgment as to Questions 1, 2, and 4 in favor of the Town of Maidstone pursuant to V.R.C.P. 56(f)(1). The parties have **15 days from the date of this decision in which to respond** to the Court's intended action.

Electronically signed on June 24, 2015 at 11:30 AM pursuant to V.R.E.F. 7(d).

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

7